UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO: CR 212-1 |
| | ) | |
| v. | ) | |
| | ) | |
| RODERICK BURROWS | ) | |
| | ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by and through Edward J. Tarver, United States Attorney for the Southern District of Georgia, and files its combined response to pretrial motions of Defendant Roderick Burrows ("Defendant"). Preliminary, the Government submits that its expanded discovery policy, as set forth below, responds to the majority of Defendant's motions. In addition, the Government submits that it has provided counsel for Defendant all discovery currently in its possession.

A.   **Initial Statement Regarding Government's Discovery Policy**

The Government will have a liberal discovery policy in this case. This means that without conceding the merits of any motions which may be filed by Defendant, the Government believes that no undue burden, restriction, or hindrance in the development by investigation or the presentation upon trial of this case would result from full disclosure to Defendant of the evidentiary contents of the Government case file, saving only those notes and mental impressions made by the United States Attorney or his assistants from investigative material in preparation for trial, inter- and intra-agency correspondence, regulations, procedures, manuals, etc.,

regarding matters of policy, strategy, or as a part of discretionary decision-making processes, and other exceptions as may be set out below.

B.      **Brady Motion and Memorandum of Law in Support Thereof [Doc 17]**

The Government has provided law enforcement reports, criminal history information, bank records, a copy of the search warrant and a copy of the traffic stop video in this case. The Government submits that its liberal, expansive discovery policy satisfies Defendant's motion in terms of what may be in the Government's possession at this time. The Government will provide all materials of an exculpatory or arguably favorable nature, together with all information pertaining to its witnesses of an arguably impeaching nature, as soon as practicable after they are received by the United States Attorney's Office. This will include "RAP" sheets for Defendant and witnesses, plea agreements, promises of leniency, or grants of immunity to any witness, prior bad acts of witnesses to the extent they are known to the Government, prior inconsistent statements, misidentifications, or the like. The Government recognizes its continuing duty to provide such materials as they become available.

This intention to provide exculpatory, arguably favorable, or impeaching information on an immediate and continuing basis should not be construed so as to relieve Defendant of making particularized demands and showings of materiality and need for specifically identified items, for while the Government fully intends a good faith effort to identify and produce materials under its obligation as defined by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972),  United States v. Agurs, 427 U.S. 97 (1976), and their progeny, characterizations of particular items or information as falling within that obligation may differ, and Defendant may find exculpatory or impeaching use of an item of information in a manner

not apparent to or anticipated by the Government.  Likewise, nothing herein should be construed to relieve Defendant of the obligation to acquire on his own matters of public record.

C. **Motion for Disclosure of Seized Evidence the Government Intends to Rely Upon at Trial [Doc 18]**

The Government is providing all evidence in its possession.  It is the Government's position that none of the evidence in this case is subject to suppression, and, absent an explicit expression to the contrary, the Government intends to use it all.  The Government is not capable of providing a meaningful response until Defendant first sets forth with particularity the exact evidence sought to be suppressed, facts relating to its acquisition by the Government, and the legal basis for the suppression sought.

D. **Notice of Request for Notice of Evidence of Other Crimes, Wrongs or Acts Pursuant to Fed. R. Evid. 404(b) [Doc 19]**

At this time, the Government does not intend to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence and Local Criminal Rule 16.2.

E. **Motion for Discovery and Inspection [Doc 20]**

The Government has provided law enforcement reports, criminal history information, bank records, a copy of the search warrant and a copy of the traffic stop video in this case.  The Government submits that its liberal, expansive discovery policy satisfies Defendant's motion for discovery of materials in the Government's possession.  If Defendant wishes to view physical evidence in the Government's possession, counsel need only contact the undersigned Assistant United States Attorney to make arrangements for that inspection.  Further, the Government will provide Defendant with notice and copies of any additional reports or evidence coming into the Government's possession as soon as it comes into the Government's possession.

**F.      Motion to Suppress [Doc 21]**

Defendant argues that the search of his vehicle by law enforcement should be suppressed because (1) there was no probable cause to stop the vehicle; (2) the search of the vehicle was unlawful; and (3) the drug dog was not sufficiently reliable. Defendant further argues that his statements to law enforcement should be suppressed after he was placed in handcuffs. Finally, Defendant argues that the search of his computer was unlawful because of unreasonable delay in obtaining the search warrant. The Government maintains that the stop and search of Defendant's vehicle was lawful. The Government further maintains that the search of Defendant's computer was also lawful. As noted in more detail below, the Government concedes that Defendant's statements to law enforcement after he was handcuffed should be suppressed.

**1.  The stop was lawful.**

A decision to stop a vehicle is reasonable under the Fourth Amendment where an officer has probable cause to believe that a traffic violation has occurred. See, e.g., United States v. Simmons, 172 F.3d 775, 778 (11th Cir.1999). Here, Defendant's vehicle was observed by the officer for failing to maintain a lane in violation of Georgia law. Defendant does not dispute this violation when confronted by the officer during the traffic stop.

**2.  The search was lawful.**

The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures, and restricts warrant searches to those based upon probable cause. Here, after stopping the vehicle, Defendant provided suspicious information to the officer regarding his travel plans. Because of his suspicions, the officer called for a K-9 unit to conduct a free air search. Within a few minutes, another officer ran a K-9 drug dog around the vehicle, and it

alerted. The search, and the recovery of the fraudulent driver's licenses, credit cards, magnetic card reader/writer and computer then followed.

A traffic stop should end when the officer has obtained all the information required and has investigated the vehicle and its occupants to the extent permitted by law. At that point, absent reasonable suspicion or consent, the detention must end. See, e.g., United States v. Boyce, 351 F.3d 1102 (11th Cir. 2003). However, it is equally well established that in connection with a traffic stop, the officer may approach the passenger or other occupants for the purpose of verifying identity and basic travel information such as destination and purpose of visit. If notable inconsistencies are present in the various stories, further investigation is warranted. United States v. Brigham, 2004 WL 1854552 (5th Cir.(Tex. Aug. 19, 2004))(police officer's questioning of driver and his companions about their travel plans and itinerary was fully within scope of detention justified by his lawful stop of motor vehicle for following too closely); United States v. Barragan, 2004 WL 1823331 (8th Cir.(Neb. Aug. 14, 2004)) (An officer may question a vehicle's passengers to verify information provided by the driver, United States v. Linkous, 285 F.3d 716, 719 (8th Cir.2002), and conflicting stories may provide justification to expand the scope of the stop and detain the occupants. United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003); United States v. West, 219 F.3d 1171, 1176 (questions about travel plans are routine and 'may be asked as a matter of course without exceeding the proper scope of a traffic stop' ") (quoting United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir.1996). These questions may be asked of both the driver and the passengers. See United States v. Rivera, 867 F.2d 1261, 1263 (10th Cir. 1989) (stating that an officer "could legitimately ask questions relating to the identity and travel plans of [the driver] and [his passenger]" and noting that the inconsistent answers provided by the two of them supported the finding of reasonable suspicion)).

Furthermore, it is well-established that during a traffic stop, officers may "prolong the detention to investigate the driver's license and vehicle registration." United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001); accord United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999)(stating that upon valid detention at traffic stop, police plainly entitled to conduct a variety of checks on driver and car, including running a computer check for outstanding warrants).

The evidence seized in this case is admissible under either of two theories:

a. There was no unreasonable expansion of the traffic stop.

The officer's procedures and actions throughout the stop were correct and lawful. The K-9 was summoned while he was performing a routine traffic stop, and conducted its search while the officer completed the traffic stop. At that point, the dog gave a positive alert. The encounter from the time of the initial traffic stop to the K-9 alert on the vehicle was approximately eleven minutes. The delay, if any, was completely *de minimus*.

b. If any delay occurred, the officer had reasonable suspicion to do so.

If any delay did occur, it was justified. A law enforcement officer may briefly detain a person for investigative purposes (Terry stop) when that officer has "reasonable suspicion," based on articulable facts, that criminal activity is afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968). The Court determines the presence or absence of reasonable suspicion in light of the totality of the circumstances; none of a suspect's actions need to be criminal on their face, yet taken together they can provide trained police with reasonable suspicion. United States v. Lee, 68 F.3d 1267 (11th Cir. 1995). The legitimacy of an investigative stop thus turns on what constitutes "reasonable suspicion." Because the intrusion created by an investigative stop is minimal, the reasonable suspicion standard is not onerous. Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the

evidence or even the requirement of probable cause that evidence of a crime will be found. United States v. Mikell, *supra;* United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990). To determine whether the reasonable suspicion required for a Terry detention existed, the Court should examine the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 7-8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Here, Defendant was questioned briefly and lawfully about his travel plans, destination, etc., and suspicious information. Defendant's statements, together with his apparent nervousness certainly justify a brief detention to investigate the situation further. Of course, once the dog alerted, the search was lawful. There are only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of a stopped automobile. The first is whether the automobile is readily mobile. All that is necessary to satisfy this element is that the automobile is operational. United States v. Nixon, 918 F.2d 895, 903 (11th Cir. 1990). This vehicle clearly was operational.

The second prong of the test is probable cause. A positive alert by a drug dog constitutes probable cause. See, *e.g.*, United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993). This combination of factors gave the officer the legal right to search the vehicle, which he did. In United States v. Tamari, 454 F.3d 1259 (11th Cir. 2006), the Court held:

> [w]e have long recognized that probable cause arises when a drug-trained canine alerts to drugs. United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993); *see also* United States v. Dunkley, 911 F.2d 522, 527 (11th Cir.1990); United States v. Puglisi, 723 F.2d 779, 783 (11th Cir.1984). Notwithstanding the facts validating the initial search, Ho Jo's positive alert was itself sufficient to give agents probable cause to search the Hummer a second time.

Id. at 1265.  In this case the officers had probable cause to search the vehicle after the K-9 gave a positive alert.  While searching for narcotics, the officers found the fake driver's licenses, which provided additional probable cause to continue the search and to seize the credit cards, magnetic card reader/writer and laptop computer.

    3.   **The Statement by Defendant.**

Defendant seeks to suppress his statement to law enforcement after he was placed into handcuffs.  After the fake driver's licenses were discovered, while Defendant was restrained in handcuffs, the officers asked Defendant questions about the fake driver's licenses.  Defendant stated he got them on-line.  As it appears indisputable that Defendant was under arrest at the time the officers asked this question, and as it related directly to the investigation and was done without benefit of Miranda warnings, the Government concedes that it should be suppressed. However, while it was *legally* involuntary, it was not *physically* involuntary, and thus can be used for impeachment if the defendant testifies at trial.

    4.   **The search warrant was lawful.**

Defendant argues that the search warrant obtained 17 days after the seizure of his laptop computer is unreasonable, and thus; the entire search warrant should be suppressed.  The Government maintains that this case is distinguishable from the case Defendant relies upon, United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009).  In Mitchell, the Court noted that any delay between the initial seizure of the hard drive and the issuance of the search warrant must be determined "in light of all the facts and circumstances," and "on a case-by-case basis." United States v. Mayomi, 873 F.2d 1049, 1054 n. 6 (7th Cir.1989). "[T]he reasonableness determination will reflect a 'careful balancing of governmental and private interests.' " Soldal v. Cook County,

506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *see also United States v. Prevo,* 435 F.3d 1343, 1345 (11th Cir.2006).

This 25th Day of April, 2012.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

**s/ Tania D. Groover**
Tania D. Groover
Assistant United States Attorney
Georgia Bar No. 127947

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 201-2552
Facsimile: (912) 652-4388
E-mail: tania.groover@usdoj.gov

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

Submitted this 25th day of April, 2012.

                                      EDWARD J. TARVER
                                    UNITED STATES ATTORNEY

                                    **s/ Tania D. Groover**
                                    Tania D. Groover
                                    Assistant United States Attorney
                                    Georgia Bar No. 127947

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 201-2552
Facsimile: (912) 652-4388
E-mail: tania.groover@usdoj.gov